BEFORE:  HON. TIMOTHY C. STANCEU, SENIOR JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Jiangsu Nova Intelligent Logistics Equipment Co., Ltd., Nanjing Jinshidai Storage Equipment Co., Ltd., and Hebei Nova Intelligent Logistics Equipment Co., Ltd.<br><br>                              Plaintiffs,<br>       v.<br><br>United States,<br>                              Defendant,<br>            and<br><br>Coalition for Fair Rack Imports,<br><br>                              Defendant-Intervenor. | Court No. 25-00175 |

**Memorandum Of Law In Support Of
The Rule 56.2 Motion Of Plaintiffs For
Judgment Upon The Agency Record**

David J. Craven
Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 709-8506
David.craven@tradelaw.com

Date February 13, 2026

TABLE OF AUTHORITIES

**Court:**

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) ...................6

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281 (1974)............................................................................................................7

*Brookside Veneers, Ltd. v. United States*, 847 F.2d 786 (Fed.Cir.1988)..................8, 14

*Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) ....................................................7

*Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197 (1938) ..........................6

*Cresswell Trading Co., Inc. v. United States*, 15 F.3d 1054 (Fed. Cir. 1994) ........................................................................................................16

*Diversified Products Corp. v. United States*, 6 CIT 155 (1983) ..............................6

*Gerald Metals, Inc. v. United States*, 132 F.3d 716 (Fed. Cir. 1997).......................6

*JBF RAK LLC. v. United States,* 790 F.3d 1358 (Fed. Cir. 2015).....................9, 10

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ...............................3,5

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301 (Fed. Cir. 2009)....................7

*Marmen v. United States* 545 F.Supp.3d 1305 (Fed, Cir. 2021) .......................3,4,11

*Novosteel SA v. United States,* 284 F. 3d 1261 (Fed. Cir. 2002) ............................7

*Perrin v. United States*, 444 U.S. 37 (1979)...............................................7, 13

*Precision Specialty Metals, Inc. v. United States*, 116 F.Supp.2d 1350 (Ct. Int'l Trade 2000).........................................................................7, 8, 14

*SKF USA, Inc. v. United States.* 254 F.3d 1022 (Fed. Cir. 2001) ...........................7

*Stupp Corporation v. United States*, 5 F.4th 1341 (Fed. Cir. 2021).......................17

*Tung Mung Dev. Co., v. United States*, 354 F.3d 1371 (Fed. Cir. 2004) .................7

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) ........................................6

*USX Corp. v. United States*, 11 CIT 82, 655 F. Supp. 487 (1987)............................6

**Statute and Regulation:**

19 U.S.C. § 1516a (a)(2)(B)(iii)...............................................................................2

19 U.S.C. §1516a(b) ...............................................................................................5

19 U.S.C. §1673d(c)(5) ............................................................................5

19 U.S.C. 1677f-1 (d)(1)(B) ......................................................8, 13, 18

**Administrative:**

Rule 56.2(c) of the Rules of the U.S. Court of International Trade .....................1, 2

19 C.F.R. § 351.224(g) .......................................................................21

19 C.F.R. § 351.414(b)(1)-(3)............................................................9, 10

19 C.F.R. §351.525(b) ........................................................................21

19 C.F.R. §351.525(d) ........................................................................22

*Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab*
*Emirates,* 78 Fed. Reg. 29,700 (May 21, 2013) ............................................11

*Non-Application of Previously Withdrawn Regulatory Provisions*
*Governing Targeted Dumping in Antidumping Duty Investigations*
79 Fed. Reg. 22371 (April 22, 2014)............................................................11

Statement of Administrative Action, H.R. Doc. No. 103- 316  (1994).........1, 16, 20

TABLE OF CONTENTS

I.     Introduction...................................................................................................1

II.    Statement Pursuant to Rule 56.2(C) ........................................................2

       A. Administrative Determination Under Review...........................................2

III.   Issues of Law ................................................................................................2

IV.    Summary of Arguments................................................................................4

V.     Statement of Facts.........................................................................................4

VI.    Standard of Review.......................................................................................5

VII.   Argument .......................................................................................................8

       a.     The Department erred when it conducted a differential
              pricing analysis..................................................................................8

       b.     The Department's New Differential Pricing Analysis is
              Flawed ...............................................................................................11

              A.     Commerce Must Explain the Basis for Its New Price
                     Test........................................................................................15

              B.     Commerce's Ratio Test Is Inconsistent With the
                     Statute.................................................................................... 17

              C.     Commerce Must Provide a Full Explanation of All of
                     the Aspects of Its New Differential Pricing Analysis.............19

              D.     Commerce Must Modify the Basis for Its New Price
                     Difference Test .....................................................................21

VIII.  Conclusion ...................................................................................................23

BEFORE:  HON. TIMOTHY C. STANCEU, SENIOR JUDGE

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Jiangsu Nova Intelligent Logistics Equipment Co., Ltd., Nanjing Jinshidai Storage Equipment Co., Ltd., and Hebei Nova Intelligent Logistics Equipment Co., Ltd.<br><br>　　　　　　　　　Plaintiffs,<br>　　　v.<br><br>United States,<br>　　　　　　　　Defendant,<br>　　　and<br><br>Coalition for Fair Rack Imports,<br><br>　　　　　　　　Defendant-Intervenor. | Court No. 25-00175 |

### Memorandum Of Law In Support Of The Rule 56.2 Motion Of Plaintiffs For Judgment Upon The Agency Record

## I.    Introduction

This is an appeal from the final results of the Antidumping Duty Administrative Review of *Certain Steel Racks and Parts Thereof from China, 90 Fed. Reg. 30,629* (July 10, 2025).   Plaintiff Jiangsu Nova Intelligent Logistics Equipment Co., Ltd was designated as a mandatory respondent and all plaintiffs were active participants in the review.

Plaintiffs assert the following errors in the Department of Commerce's ("Commerce", "Department" or "DOC") final determination:

- The Department's application of a differential pricing analysis to administrative reviews is not permitted by the statute.

1

- The Department's alternate differential pricing analysis is arbitrary and capricious.

## II.    Statement Pursuant to Rule 56.2(C)

A. Administrative Determination Under Review

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest Commerce's  final determination in its administrative review of certain steel racks and parts thereof from the People's Republic of China, published as *Certain Steel Racks and Parts Thereof from China,* 90 *Fed. Reg.* 30,629 (July 10, 2025) (P.R. 178[1]) and Issues and Decision Memorandum ("IDM") accompanying the Department's Final Determination (P.R. 177).  In the Final Results, Commerce assigned a rate of 11.18% to plaintiffs .

## III.    Issues of Law

The Plaintiffs present the following issues.  Commerce's determination was not based on substantial evidence on the record, and was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law.  The issues are:

- Whether the application of a differential pricing analysis to an administrative review is proper in light of the clear language of the statute only permitting such analysis in investigations.

---

[1] This brief uses the following abbreviations: **P.R.** = Public Record; **C.R.** = confidential record; **AFA** = adverse facts available;

The statute which permits a differential pricing analysis only expressly references investigations, not reviews.   The Court precedent which permitted the use of such analysis in reviews was predicated on the use of Chevron deference. The elimination of Chevron deference by the U.S. Supreme Court  in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) combined with the changes in the regulations and practices since the Court precedent means that *stare decisis*  does not apply, this issue should be revisited and the Court should have the ultimate determination as to whether or not there is a gap, and how it should be filled.

- Whether the Department's Alternative to Cohen's D was Appropriate

In the preliminary results, the Department used Cohen's D as the "price test" in its differential pricing analysis and also used a ratio of 66% in the ratio test. Subsequent to the preliminary results, the Court of Appeals for the Federal Circuit in *Marmen v. United States* 545 F.Supp.3d 1305 (Fed, Cir. 2021) invalidated the use of Cohen's D for use in the price test in conducting differential pricing analysis.   In the final results the Department used an alternate method for the price test in lieu of Cohen's D and also changed the ratio test to 33%.   This new price test is not appropriate and is an arbitrary and capricious method of conducting this analysis and the Department failed to explain why it changed the ratio test.

3

## IV.    Summary of Arguments

- The Department erred when it applied a differential pricing analysis to plaintiffs as the proceeding at issue was an administrative review. The language of the statute makes it clear that such analysis should only apply in investigations.

- The Department further erred when it applied a flawed alternative to the Cohen's D test in conducting a differential pricing analysis. While the use of Cohen's D in differential pricing analyses was overturned by the U.S. Court of Appeals for the Federal Circuit in *Marmen v. United States,* such action does not permit the Department to substitute a results-oriented arbitrary method to conduct such analysis.

## V.    Statement of Facts

The Department initiated this matter in response to a request for review filed by the U.S. domestic industry on October 2, 2023 (PR8)  and a request for review filed by Nova on September 15, 2023 (PR1).  See *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 88  Fed. Reg. 78298 (November 15, 2023) (PR17). On October 10, 2024 the Department published the preliminary results as *Certain Steel Racks and Parts Thereof from the People's Republic of China: Preliminary Results and Partial Rescission of the Antidumping Duty Administrative Review; 2022–2023*  89 Fed. Reg. 82213 (October 10, 2024). (PR138).    Plaintiffs were assigned a rate of 10.14%.  On July 7, 2025 the Department issued the final results (PR176) and an Issues and Decisions Memorandum explaining the decision (PR177) .  On July 10, 2025,  these results were published in the Federal Register as *Certain Steel Racks and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2022–2023,* 90 Fed. Reg. 30629 (July 10, 2025). (PR178)

4

In the final results the Department assigned a rate of 11.18% to plaintiffs.    There are no facts in dispute in this matter, but rather this Court matter turns on legal argument and whether the Department failed to properly justify its changes from extant practice.

## VI.    Standard of Review

The Court will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law. 19 U.S.C. §1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §1673d(c)(5) is "in accordance with law," the courts review the statute to determine whether Congress has directly spoken to the precise question at issue.

If the statute is silent or ambiguous with respect to the specific issue, the Supreme Court has held that it is the responsibility of the Federal Courts to determine the meaning of the law. *Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).  Loper* stated in relevant part "*Chevron* is overruled. Courts must exercise their dependent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright* 144 S.Ct. 2244 at 2273.

Furthermore, once the statute has been properly interpreted by the Court, the question is then whether the decision is supported by substantial evidence. Substantial evidence is well defined by Court precedent.  Substantial evidence is

"more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938).  Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted).  Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {that} view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987).  The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation in making a determination. *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F. 3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

It is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004). Commerce's decision will be set aside if it is arbitrary and capricious. *See, e.g., SKF USA, Inc. v. United States.* 254 F.3d 1022, 1028 (Fed. Cir. 2001). "{A} reviewing court must apply both standards {substantial evidence, and arbitrary and capricious or contrary to law}, while  "an agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974)).

Words must be given their ordinary meaning.  See *Precision Specialty Metals, Inc. v. United States*, 116 F.Supp.2d 1350 (Ct. Int'l Trade 2000) which states "When a word is undefined in a statute, the agency and the reviewing court normally give the undefined term its ordinary meaning. See *Perrin v. United States*, 444 U.S. 37,

7

42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). "To assist it in ascertaining the common meaning of a tariff term, the court may rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed.Cir.1988)." (*Precision Specialty* at 1362.)

## VII.  Argument

### a.  The Department erred when it conducted a differential pricing analysis.

In order for the Department to be able to act, it must have the statutory authority to act.  The relevant provision of law is 19 U.S.C. 1677f-1 (d)(1)(B). This provision is clear and unambiguous. This provision reads in relevant part:

(d)  Determination of less than fair value

(1)Investigations

(A) In general

In an investigation under part II of this subtitle, the administering authority shall determine whether the subject merchandise is being sold in the United States at less than fair value—

> (i)    by comparing the weighted average of the normal values to the weighted average of the export prices (and

constructed export prices) for comparable merchandise, or

(ii)    by comparing the normal values of individual transactions to the export prices (or constructed export prices) of individual transactions for comparable merchandise.

(B)Exception

The administering authority may determine whether the subject merchandise is being sold in the United States at less than fair value by comparing the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise, if—

(i)    there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time, and

(ii)    the administering authority explains why such differences cannot be taken into account using a method described in paragraph (1)(A)(i) or (ii).

This provision, by its express language, applies to investigations, not reviews, but the Department has elected to apply this to reviews as well in order to fill what it perceived as a gap in the statute.  The normal method for calculating a margin is Average to Average.

This issue was previously considered by the Court of International Trade and the U.S. Court of Appeals for the Federal Circuit.   The seminal opinion is the U.S. Court of Appeals opinion in *JBF RAK LLC. v. United States,* 790 F.3d 1358 (Fed. Cir. 2015).  In the *JBF RAK* case the Federal Circuit held:

Pursuant to 19 C.F.R. § 351.414(b) (2012), "[c]omparison of normal value with export price (constructed export price)," there are three methods by which value may be compared to export price or constructed export price: (1) average-to-average: "a comparison of the weighted average of the normal values with the weighted average of the export prices (and constructed export prices) for comparable merchandise;" (2) transaction-to-transaction: "a comparison of the normal values of individual transactions with the export prices (or constructed

9

export prices) of individual transactions for comparable merchandise;" and (3) average-to-transaction: "a comparison of the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise." 19 C.F.R. § 351.414(b)(1)-(3). The regulation also states that in choosing the method of review *"in an investigation* or review, [Commerce] will use the average to-average method unless [it] determines another method is appropriate in a particular case." *Id.* at § 351.414(c)(1) (emphasis added).

Here, Commerce "exercised its gap-filling discretion by applying a comparison methodology{, i.e. the average-to-transaction comparison method,} in reviews that parallels the methodology used in investigations." *JBF RAK.* 991 F,Supp.2d at 1347. JBF RAK points to no authority that contradicts this practice. Thus, contrary to JBF RAK's claims, Commerce's decision to apply its average-to-transaction comparison methodology in the context of an administrative review is reasonable. Because Congress did not provide for a direct methodology, Commerce properly "fill{ed} th{at} gap." *Chevron.* 467 U.S, at 843, 104 S.Ct. 277

*JBF RAK LLC* at 1364.

Thus, the entire underpinning of the *JBF RAK* opinion was the finding of a gap and the filing of this gap by the Department using *Chevron* deference.  This is critical in the case at bar as much of the Department's support for its decision to use the alternate methodology is based on the concept of filing in the gaps.

While *JBF RAK* was not expressly overturned by *Loper*, and in fact, *Loper* expressly did not specifically overturn prior determinations, holding that *stare decisis* would continue to apply to prior decisions made under *Chevron*, Plaintiffs submit that the principle of *stare decisis*  does not apply to this case.   *JBF RAK* was issued in 2015 and was based on the 2012 regulations and thus related to the regulations in place at the time that the administrative decision was made.  *JBF RAK v. United States,* 790 F.3d 1358, 1362 (Fed. Cir. 2015).    The final

administrative decision was issued on May 21, 2013 ( *Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates,* 78 Fed. Reg. 29,700 (May 21, 2013)).    However, the differential pricing regulations were impacted by the final rule issued by the Department on April 22, 2014 (*Non-Application of Previously Withdrawn Regulatory Provisions Governing Targeted Dumping in Antidumping Duty Investigations.* 79 Fed. Reg. 22371 (April 22, 2014) and critically, the interpretations have also changed as a result of the rejection of the Cohen's D test.  As such, the *JBF RAK* decision was not expressly considering the same regulations, it is not necessarily controlling, and *stare decisis* should not apply.

Accordingly, this Court should consider anew the plain language of the statute, whether there is a gap  in the statute, and if so, whether the Department's filling of the gap.   We submit that, based on the plain language of the statute, there is no gap and thus the new regulation filling the gap is thus unnecessary.

b.    The Department's New Differential Pricing Analysis is Flawed

The Department of Commerce's use of Cohen's D in conducting the price test portion of a differential pricing analysis has been expressly overturned by the Court of Appeals for the Federal Circuit in *Marmen Inc. v. United States* and the Department has now applied a new method (the "2%" method) for conducting this analysis.   The Department also changed the "ratio test" from the prior 66% test to a

new 33% test. This new methodology was implemented by the Department after the matter had been briefed at the administrative level and was only revealed to plaintiffs when the final results were promulgated. As such, plaintiffs were not provided an opportunity to comment on the methodology until this 56.2 motion and thus there is no issue with respect to exhaustion of administrative remedies with respect to this issue. The Department should have provided plaintiffs an opportunity to address this issue in the administrative process, and this matter should, at a minimum, be remanded to the Department to permit plaintiffs to comment on this new calculation methodology, permit the Department's position to be enumerated in response to such comments, and then, if necessary, to judicially review the determination.

The test is whether there is a "pattern * * * that differ{s} significantly among purchasers, regions, or periods of time", not whether a specific test has been applied. In the final results the Department applied a differential pricing analysis using a new and different standard than Cohen's D for the price test and a new and different standard for the ratio test. Cohen's D, and the alternative now being proposed by the Department are mere tools. These methods are simply **a** tool to determine whether there is a pattern of prices that differ significantly among purchasers, regions, or time periods. The primary purpose of the differential pricing analysis is to find a pattern of prices that differ significantly, not simply whether some tool

produces an artificial result. These new standards for both the price and ratio tests should be rejected.

The language of the statute (19 U.S.C. 1677f-1 (d)(1)(B)) is quite clear.  It states:

**(d)Determination of less than fair value**

**(1)Investigations**

* * *

**(B)Exception**

The <u>administering authority</u> may determine whether the <u>subject merchandise</u> is being sold in the United States at less than fair value by comparing the weighted average of the normal values to the <u>export prices</u> (or <u>constructed export prices</u>) of individual transactions for comparable merchandise, if—

**(i)** there is a pattern of <u>export prices</u> (or <u>constructed export prices</u>) for comparable merchandise **that differ significantly among purchasers, regions, or periods of time**, and

**(ii)** the <u>administering authority</u> explains why such differences cannot be taken into account using a method described in paragraph (1)(A)(i) or (ii).

19 U.S.C. 1677f-1 (d)(1)(B) (Emphasis Added)

The critical part of this is the term "significant" and what does it mean.  The law is clear.  Where, as here, the term "significant" is not defined in the statute, the ordinary meaning of the word controls.   As noted by the U.S. Supreme Court "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979)".   This standard has

also been adopted by the U.S. Court of International Trade (*Precision Specialty Metals, Inc. v. United States*, 116 F.Supp.2d 1350 (Ct. Int'l Trade 2000) and the Court of Appeals for the Federal Circuit (*Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed.Cir.1988)). While Commerce has not explained why the picked tests support a finding of "significant", the Court should ultimately consider whether the purported differences are significant. To the degree that Commerce continues to apply its new differential pricing analysis in this review to determine whether prices differed significantly among purchasers, regions, or time periods pursuant to section 777A(d)(1)(B)(i) of the Tariff Act of 1930, Commerce must provide full explanations for the basis used in the "price difference test" and the "ratio test" used to determine whether prices differ significantly. The two percent price difference test is arbitrary and the Department's change to a 33% ratio test is also unsupported. Both of these decisions are arbitrary, do not comport with any reasonable understanding of the term "significant," and the results do not indicate that prices differ significantly.

It has long been Commerce's practice that a "pattern" within the meaning of the statute exists only when apparent price differences are beyond something that might occur by chance. That is, a "pattern of prices that differ significantly among purchasers, regions, or time periods" means that Commerce should examine the extent to which the prices, when ordered by purchaser, region or time period,

14

exhibit differences that have meaning, that have or may have influence or effect, that are noticeably or measurably large, and that may be beyond something that occurs merely by chance.   The burden is on Commerce to establish that the results of its analysis are not arbitrary, but are based on a recognizable pattern that is grounded in substantial evidence.   See *Cresswell Trading Co., Inc. v. United States*, 15 F.3d 1054 (Fed. Cir. 1994) A "pattern" exists within the meaning of the statute only when the evidence allows it to reject the hypothesis that any observed price differences reflect nothing more than random fluctuations, Commerce's new test is not based on this principle.

### A. Commerce Must Explain the Basis for Its New Price Test

In the issues and decisions memorandum, and as discussed above, Commerce applies two tests in determining whether a significant difference exists and thus it is appropriate to deviate from the expected method.   These are the "price differential test" (aka "price test") and the "ratio test.".

The first test applied is the "price test".   This test is applied to determine whether prices differ significantly. (I&D Memo at 6)(PR177).  For comparable merchandise, the new price difference test examines whether the weighted-average net price to a given purchaser, region, or time period is within **two** percent of the weighted average net price to all other purchasers, regions, or time periods.  Id. Commerce indicated that if the weighted-average net price to the given purchaser,

region, or time period falls outside of the plus or minus two percent band around the weighted- average net price to all other purchasers, regions, or time periods, then the prices to that given purchaser, region, or time period thus "differ significantly" and those sales to the given purchaser, region, or time period pass the price difference test. Commerce has not explained why it chose a "two percent" test or why a "two percent" difference in weighted-average net prices constitutes a "significant" difference within the meaning of the statute.

Commerce needs to provide these explanations. The Statement of Administrative Action mandates a case by case approach. It states in relevant part:

> In addition, the Administration intends that in determining whether a pattern of significant price differences exist, Commerce will proceed on a case-by-case basis, because small differences may be significant for one industry or one type of product, but not for another.")
> H.R. Doc. No. 103- 316, at 842-43 (1994) (emphasis added).

A "one size fits all" two percent/thirty-three percent approach is not consistent with the case by case basis mandated by the Statement of Administrative Action. In theory, Commerce might consider that the two-percent threshold for significance under its new price difference test is reasonable because such threshold is consistent with the two percentage point amount used by Commerce in other contexts, such as the arm's-length test, as well as the threshold for de *minimis* rates in less-than-fair value investigations.

Such explanations would be misplaced. The issue here is not whether

Commerce has used a two-percentage point threshold in other contexts, but what should be the threshold for determining whether a percentage difference is "significant" (such that prices of comparable merchandise "differ significantly"). Commerce's consideration of a difference as low as two percentage points to be "significant" in its price difference test is not credible or reasonable, especially in contexts where the statute and regulations do not use the terms "significant" or "significantly."

### B. Commerce's Ratio Test Is Inconsistent With the Statute

The second test is the ratio test. (Id.)   Commerce has changed this test from its long-established and defended in Court 66% test. This test calculates the ratio of the total value of the sales that pass the price differential test (the 2% discussed above) to the total value of sales.   If 33% or less of the total sales do not pass the "price difference" test, the Department will not find that there is a pattern of price that differ significantly during the POR.  Commerce has reduced the threshold for the application of the A-T price comparison method to all sales to 33%. This is inconsistent with the position taken by Commerce in *Stupp Corporation v. United States*, 5 F.4th 1341, 1533 (Fed. Cir. 2021).  There, Commerce stated that it was reasonable to apply the A-T method to all sales if it found 66% of sales were "significantly different" because "when two-thirds or more of a respondent's sales are at prices that differ significantly, then the extent of these sales is so pervasive

that" the normal average to average method would not permit Commerce "to separate the effect of the sales where prices differ significantly from those where prices do not differ significantly." Commerce also stated that when it "finds that between one third and two thirds of U.S. sales are at prices that differ significantly … the effect of this pattern can reasonably be separated from sales whose prices do not differ significantly." Id. at 1355. Commerce has provided no justification for why this rationale no longer applies and why it now is appropriate to apply the A-T method when it finds that merely 33% of sales "differ significantly".  Commerce has simply stated this changed test as a *fait accompli* without stating that the test as changed, let alone providing justification for the change. Commerce needs to explain sufficiently why its previous rationale no longer applies or must discontinue its new approach.

   In addition, the "ratio test" was misapplied.  As discussed, Commerce is permitted to compare weighted-average normal values to individual export prices or constructed export prices (the A-T method) only if Commerce finds that "there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time."  19 U.S.C. § 1677f-1(d)(1)(B) (emphasis added).  Under its new test, Commerce incorrectly applied the "ratio test" conjunctively (examining whether there is a pattern of prices that differ significantly among purchases, regions, and

time periods. The statute, in contrast, is disjunctive ("or" rather than "and"); it requires a pattern of prices that differ significantly "among purchasers, regions, or period of time …".

This error is not simply grammatical. Under the "ratio test," Commerce (1) "calculates the ratio of the total value of sales that pass the price difference test to the total value of sales by the respondent in the United States during the period of review," and (2) "if more than 33 percent of the total value of U.S. sales passes the price difference test, then Commerce will find that a pattern of price differences existed during the period of review." In other words, Commerce calculates a single combined ratio in which the numerator consists of all sales that pass the two percent test for any of the three categories (purchasers, regions, and periods of time) and the denominator consists of all sales. To be consistent with the statute, Commerce instead must find a pattern of significant price differences among "purchasers, regions, or periods of time," by calculating separate ratios for each of these groups. The practical impact of this error is that Commerce has lowered the threshold set forth in the statute for finding a "pattern" and, thus, for applying the exceptional A-T price comparison method.

### C. Commerce Must Provide a Full Explanation of All of the Aspects of Its New Differential Pricing Analysis

Commerce needs to provide explanations for these new tests and changes from extant tests rather than simply announcing the new and changed tests.

19

Further, it should explain how these tests are appropriate in context of the particular review or investigation.   The Statement of Administrative Action mandates a case by case approach.   It states in relevant part:

> In addition, the Administration intends that in determining whether a pattern of significant price differences exist, Commerce will proceed on a case-by-case basis, because small differences may be significant for one industry or one type of product, but not for another.")
> H.R. Doc. No. 103- 316, at 842-43 (1994) (emphasis added).

A "one size fits all" two percent price test and thirty-three percent ratio test approach is not consistent with the case by case basis mandated by the Statement of Administrative Action.    In theory, Commerce might consider that the two-percent threshold for significance under its new price difference test is reasonable because such threshold is consistent with the two percentage point amount used by Commerce in other contexts, such as the arm's- length test, as well as the threshold for de minimis rates in less-than-fair value investigations.

Such explanations would be misplaced. The issue here is not whether Commerce has used a two-percentage point threshold in other contexts, but what should be the threshold for determining whether a percentage difference is "significant" (such that prices of comparable merchandise "differ significantly"). Commerce's consideration of a difference as low as two percentage points to be "significant" in its price difference test is not credible or reasonable, especially in contexts where the statute and regulations do not use the terms "significant" or

"significantly."

Commerce also should provide an explanation for its use of a 33% threshold in its "ratio test" (to assess the extent of the significant price differences for all U.S. sales as measured by the price difference test). Commerce provided no explanation for why it found that a pattern of price differences when more than 33 percent of the total value of U.S. sales passes the price difference test. Commerce should explain why – if the purpose of its price difference test is to unmask masked dumping – it includes in the numerator of its analyses the quantities of sales that are not dumped.

### D. Commerce Must Modify the Basis for Its New Price Difference Test

This matter should be remanded and if Commerce continues to apply its new price difference test, Commerce must limit its consideration that prices differ significantly only to those comparisons where the prices differ by at least 25 percent. Such an approach would be consistent with Commerce's regulations and practice, which include numerous situations where a change must be at least 25 percent to be considered "significant." For example, a ministerial error is definitionally "significant" under 19 C.F.R. § 351.224(g) only when a correction of the error would alter the margin by at least 25 percent. In the context of 19 C.F.R. §351.525(b), a 25 percent threshold is used to determine whether a subsidy is considered to have a significant effect on the production of subject merchandise

due to cross-ownership between a utility provider and the producer (i.e., when "the producer of subject merchandise purchases a substantial percentage, normally defined as 25 percent or more"). In addition, countries experience "high" inflation under the regulations only when the rate change is "greater than 25 percent per annum." See 19 C.F.R. §351.525(d).

22

## VIII. Conclusion

This Court should remand this matter and direct that Commerce modify its approach and use 25 percent instead of two percent in the "price difference test" to determine whether prices differ significantly. Specifically, Commerce should determine that the weighted-average net price to a given purchaser, region, or time period will "differ significantly" only when that price falls outside of a plus or minus 25 percent band around the weighted-average net price to all other purchasers, regions, or time periods. The Department should also revert to the established 66% ratio test. Such decisions would be consistent with Court precedent and the facts of this case.

Respectfully submitted,

/s/ David J. Craven

David J. Craven
Counsel to Jiangsu Nova Intelligent
Logistics Equipment Co., Ltd., Nanjing
Jinshidai Storage Equipment Co., Ltd.,
and Hebei Nova Intelligent Logistics
Equipment Co., Ltd.

Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 245-4010
David.craven@tradelaw.com

Date February 13, 2026

23

<u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains 5161 words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, the Table of Authorities, the signature block, and the present certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

/s/ David J. Craven

David J. Craven
Counsel to Jiangsu Nova Intelligent Logistics Equipment Co., Ltd., Nanjing Jinshidai Storage Equipment Co., Ltd., and Hebei Nova Intelligent Logistics Equipment Co., Ltd.

Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
(773) 245-4010
David.craven@tradelaw.com

Date February 13, 2026

1